UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | )<br>)<br>) |
| Plaintiff, | ) Civil Action No. _____ |
| v. | )<br>) JURY TRIAL DEMANDED |
| JUSTIN MURPHY and<br>MARA INVESTMENTS LLC, | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff, the United States Securities and Exchange Commission (the "Commission" or "SEC"), for its complaint against Defendants, Justin Murphy ("Murphy") and Mara Investments LLC, a/k/a Mara Investment Global LLC, ("Mara Investments"), alleges as follows:

## SUMMARY

1. From at least 2016 through and including 2019, Murphy induced multiple individuals to invest in a private investment fund, Mara Investment Management LP ("the Fund") managed by Mara Investments as an investment adviser. Murphy, the principal owner and managing member of Mara Investments, told prospective investors that he was trading conservative stocks in the Fund's brokerage accounts, and generating consistent profits. Based on these claims and other information, at least eight investors invested approximately $6,600,000 in the Fund.

2. Murphy failed to deposit a large portion of the investors' money in the Fund's one brokerage account. He also repeatedly made inappropriate withdrawals of the money that was actually deposited in the brokerage account. Contrary to his claim that the investors' money

would be used to generate profits through trading in conservative stocks, Murphy ultimately used almost all of the investors' money for unauthorized business and personal expenses and to fund a company owned by a relative.

3. When the depleted assets in the Fund's brokerage account failed to generate consistent profits, Murphy concealed his mis-use of investors' money and furthered the fraud by providing his investors with falsified account statements and inaccurate tax documents that showed profitable trading.

4. Murphy ultimately stole approximately $3.4 million of his investors' money in this manner.

5. As a result of the conduct alleged herein, the Defendants have violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)]; Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rules 10b-5 thereunder [17 C.F.R. § 340.10b-5]; and Sections 206(1), 206(2), and 206(4) of the Investment Advisers Act of 1940 [15 U.S.C. § 80b-1] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## NATURE OF THE PROCEEDING AND RELIEF SOUGHT

6. The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Section 21(d) of the Exchange Act [15 U.S.C. §§ 78u(d)(1) and 78u(d)(5)]; and Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9(d)].

7. The Commission seeks a final judgment: permanently enjoining the Defendants from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint; ordering disgorgement of all ill-gotten gains from the unlawful conduct set forth in

this Complaint, together with prejudgment interest, civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] ], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)]; and ordering such other relief as the Court may deem appropriate.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa], and Section 214 of the Advisers Act [15 U.S.C. § 80b-14].

9. Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, of the mails and wires, and/or of the facilities of a national securities exchange in connection with transactions, acts, practices, and courses of business alleged herein.

10. Venue lies in this Court pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa], and Section 214 of the Advisers Act [15 U.S.C. § 80b-14]. Certain of the acts, practices, and transactions and courses of business alleged in this Complaint occurred within the District of Connecticut. Specifically, Mara Investments had its principal place of business in Greenwich, Connecticut, Murphy resided in Connecticut during the relevant time period, and Murphy solicited one or more clients who lived in Connecticut at the time of their investment in the Fund.

## DEFENDANTS

11. **Mara Investments LLC** (a/k/a Mara Investment Global LLC) ("Mara Investments") is a Delaware limited liability company and an investment adviser with its principal place of business in Greenwich, Connecticut. Since at least 2012, it has been the

3

general partner and investment adviser of Mara Investment Management LP, responsible for managing and investing its assets.

12.     **Justin Murphy**, age 48, was a resident of Greenwich, Connecticut during the relevant period.  He has been residing in Brazil since at least 2022.  Murphy has been the principal owner and managing member of Mara Investments since at least 2016.

## OTHER RELEVANT ENTITIES

13.     **Mara Investment Management LP** ("the Fund") is a Delaware limited partnership with its principal place of business in Greenwich, Connecticut.  It has been managed and controlled by its general partner, Mara Investments, since inception.  Since at least 2012, the Fund has been offering investments in the form of limited partnership interests to investors.

## FACTS

14.     On or before October 2016, Murphy and others working at his direction began cold-calling individuals and soliciting investments in the Fund.

15.     The Fund was repeatedly described to prospective investors as a conservative investment.  For instance, the private offering memorandum (a document that generally outlines the terms and other important information about an investment) for the Fund stated that the "investment objective will be to achieve capital appreciation with limited volatility and low correlation to the overall market."  To fulfill this objective, the Fund purportedly employed a complex, "proprietary" algorithm that incorporated "momentum, volatility, and volume" to enable Mara Investments to "capture the performance generated by the rotation of the market sectors delivering optimal allocation of portfolio assets."  The intended result of this strategy, was "to ensure exposure is diversified, risks are minimized, and trade executions have a minimum impact on the markets."  The Fund was described in the offering memorandum as

focusing on several sectors of the equity markets "including real estate investment trusts, asset managers, banks, utilities, shipping, consumer staples, healthcare, consumer cyclicals, [and] oil and gas."

16. In addition to providing prospective investors with the offering memorandum, Murphy and others working at his direction explained the investment strategy to prospective investors in person and on the phone in a similar manner. Murphy also falsely claimed that the Fund had trading accounts at a number of well-known brokerage firms.

17. Between at least 2016 and November 2019, the Defendants raised approximately $6,600,000 from at least eight separate investors through the sale of limited partnership interests in the Fund. Under the terms of the offering memorandum, in exchange for providing "investment advisory services," to the Fund, the Fund agreed to pay Mara Investments a 2% management fee per year, reimbursement for certain enumerated expenses (for example, accounting and legal expenses), and a performance fee of 20% of quarterly profits. The offering memorandum explicitly stated that the Defendants had responsibility for paying all of their overhead and operating expenses not explicitly payable under the offering memorandum.

18. Contrary to the Defendants' representations that investor money would be used to generate profits through securities trading and that the Defendants would pay their own overhead and operating expenses, approximately a third of the money provided by investors (over $2 million) was never even deposited into a brokerage account. Instead, it remained in a separate Mara Investments bank account. Murphy repeatedly used this bank account to pay his business credit card bill, which included charges for airline flights, hotels, cars, meals, and other expenses that were primarily personal. For instance, a significant amount of the hotel charges were for a hotel room near his office that Murphy used as his primary residence. He also repeatedly took

investors' money and transferred it to a business owned by a relative. That relative's business had no connection to Mara Investments and there was no legitimate business-related or investment-related reason for Mara Investments or Murphy to give the Fund's money to this relative's business. Further, Murphy used the money in the one brokerage account that was opened in the Fund's name for non-investment purposes, including paying his credit card bill, which included charges for hotels, jewelry, and payments to a gym. The Defendants also used over $900,000 of investor money to pay for Mara Investments' employee salaries and office rent, which were not authorized uses of investor money under the offering memorandum. The diminishing capital in the Fund further reduced the value of the investment and directly undermined the purported goal of generating returns.

19. While Murphy and others working at his direction did use the Fund's brokerage account to engage in some limited securities trading, the trading activity generated negligible profits. By March 2019, the Fund's value had dwindled to $5,000 as a result of payments made to some investors and Murphy's misappropriation. There was no securities trading in the Fund's brokerage account after March 2019.

20. Murphy, however, continued to falsely represent that the Fund was active and profitable. These misrepresentations allowed Murphy to both conceal and further the fraud, by inducing existing investors to invest more money. Murphy made false statements in emails to investors, fabricated account statements, and created false tax documents. For instance, when one investor contacted Murphy in January 2020, concerned about the lack of communication about the Fund's performance, Murphy—nearly a year after all securities trading activity in the Fund had stopped—sent her a series of emails falsely reporting Fund trading activity and results, including the below communications on the below dates:

- "The portfolio ended the day: -0.03%. We lost a bit of money, but we were essentially flat on the day. January Performance estimate stands at: +1.01%." (1/31/2020)

- "We had a quality day. End-of-Day Portfolio Estimate: +0.21% Month-To-Date Portfolio Estimate: +0.09% One more trading day left in the trading month. Balanced positions today – We will ride out the last day of trading with zero risk in the Portfolio." (2/27/2020)

- "Our Estimate on the day was: +0.72 - MTD is: +1.08%. Hope this news helps your weekend - I have the portfolio under control. Rest easy, on this side of things." (3/20/2020)

21. In April 2021, the Defendants sent an investor a tax document that showed an annual profit of around 6% for 2020. Around the same time, the Defendants sent another investor a tax document for 2020 that reflected an annual profit of around 41%. In truth, Mara Investments made no securities trades in 2020 on behalf of the Fund and generated no profits.

22. In December 2020, Murphy emailed another investor who had grown concerned about his investment. Murphy provided the investor with a spreadsheet purporting to provide details of the Fund's equity portfolio, but the information in the spreadsheet was in fact related to an entirely different fund. In May 2021, Murphy called the same investor and stated that the Fund was experiencing a good month, and claimed there had been a 4% profit to date in 2021. In reality, Mara Investments had not made any trades at all in 2021 and generated no profits.

23. Ultimately, Murphy spent approximately $3,400,000 of investor money for non-investment purposes in the manner described above. Many of these expenses were charged on the business credit card, but were primarily personal in nature. This included approximately $128,000 for a hotel where Murphy lived for extended periods, more than $85,000 on car rentals (including cars that were Murphy's daily transportation), and more than $30,000 at a jewelry and fine home goods store. He also transferred more than $550,000 from the Mara Investments' bank account to the business owned by his relative.

24. Each of the false and misleading statements and omissions set forth herein, made by Defendants individually and in the aggregate, are material. Murphy claimed that the Fund was a conservative investment and that he was actively and profitably engaged in securities trading. A reasonable investor would certainly find it important to know that their money was not being invested conservatively in the securities markets but instead being used to pay Murphy's expenses and funneled to the private business owned by his relative. The disclosure of the omitted facts or accurate information would have altered the "total mix" of information available to investors.

25. Murphy had ultimate authority for the false and misleading statements and omissions made orally and in writing to current and prospective investors. In fact, many of these statements were made by him directly to his investors.

26. Murphy knew that his statements to investors were false and misleading because he was aware that he was not investing his clients' money as promised. He was aware that he was spending the clients' money on himself and for other non-investment purposes. He was also aware that he was not generating any profits through securities trading activity, because the Fund ceased trading in March 2019.

## FIRST CLAIM FOR RELIEF

### FRAUD IN THE OFFER OR SALE OF SECURITIES

**(Violations of Section 17(a) of the Securities Act)**

27. The Commission re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 26.

28. By reason of the conduct described above, Defendants, in connection with the offer or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, directly or indirectly, acting knowingly, recklessly, or, as to (ii) and (iii),

negligently (i) employed devices, schemes, or artifices to defraud; (ii) obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (iii) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any persons, including purchasers or sellers of the securities.

29. By reason of the conduct described above, Defendants violated Securities Act Sections 17(a) [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF

**FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES**

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder)**

30. The Commission re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 26.

31. By reason of the conduct described above, Defendants, directly or indirectly, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, or of any facility of any national securities exchange, knowingly or recklessly, (i) employed devices, schemes, or artifices to defraud; (ii) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (iii) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any persons, including purchasers or sellers of the securities.

32. By reason of the conduct described above, Defendants violated Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

### THIRD CLAIM FOR RELIEF

### PROHIBITED TRANSACTIONS BY AN INVESTMENT ADVISER

### (Violations of Sections 206(1), 206(2), and 206(4) of the Advisers Act and Rule 206(4)-8 Thereunder)

33.   The Commission re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 26.

34.   At all relevant times, Murphy was an "investment adviser" within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. §80b-2(a)(11)].

35.   By engaging in the conduct described above, Defendants, while acting as an investment adviser, by use of the means and instrumentalities of interstate commerce and of the mails, directly or indirectly: (i) employed devices, schemes, or artifices to defraud clients and prospective clients; (ii) engaged in transactions, practices, or courses of business which operate as a fraud or deceit upon clients and prospective clients; and (iii) engaged in acts, practices, or courses of business which are fraudulent, deceptive or manipulative.

36.   By reason of the conduct above, Defendants violated, and unless restrained and enjoined, will continue to violate Sections 206(1), 206(2), and 206(4) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)], and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

### PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a Final Judgment:

A.   Permanently restraining and enjoining the Defendants, their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], and Section 10(b) of the

Exchange Act [15 U.S.C. 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5], and Sections 206(1) , 206(2), and 206(4) of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2), and 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8];

B.      Ordering the Defendants pay disgorgement plus prejudgment interest of all ill-gotten gains obtained by reason of the unlawful conduct alleged in this Complaint, pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)];

C.      Ordering the Defendants to each pay civil monetary penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)];

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Commission demands a jury in this matter.

DATED: December 14, 2023

Respectfully submitted,

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**

By its attorneys,

*/s/ Amy Harman Burkart*
Amy Harman Burkart (Mass BBO No. 651828)
Xinyue Angela Lin (Mass. BBO No. 672786)
Susan Cooke (DC Bar No. 978173)
Boston Regional Office
33 Arch Street, 24th Floor
Boston, Massachusetts 02110
(617) 573-8900 (Main)
(617) 573-4590 (Facsimile)
(617) 573-4538 (Cooke)
cookes@ sec.gov (Cooke)
burkarta@sec.gov (Burkart)

Local Counsel:

Michelle L. McConaghy (CT Bar No. 27157)
Assistant United States Attorney
Chief, Civil Division
United States Attorney's Office
Connecticut Financial Center
157 Church Street, 23rd Floor
New Haven, CT 06510
(203) 821-3700
(203) 773-5373 (Facsimile)